UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
Ashley PERALTA,

                Plaintiff,

- v. -

ROROS 940, INC. and John P. ROROS

                Defendants.

-------------------------------------------------------x

OPINION AND ORDER

1:11-cv-6242 (NG) (CLP)

**GERSHON, United States District Judge:**

Plaintiff Ashley Peralta brings this discrimination action against her former employer Roros 940, Inc. ("Roros Inc.") and its principal John P. Roros ("Roros"). She claims that, because of her gender and pregnancy, she was subjected to a hostile work environment and then terminated in violation of Title VII and the New York City Human Rights Law ("NYCHRL"). Plaintiff also asserts claims under the NYCHRL for interference with a protected right (§8-107(19)), aiding and abetting liability (§8-107(6)), and employer liability (§8-107(13)). While plaintiff's complaint includes additional claims of retaliation and intentional infliction of emotional distress, plaintiff withdrew those claims at the November 19, 2013 pre-motion conference. Defendants now move for summary judgment on the remaining claims. For reasons that follow, the motion is granted in part and denied in part.

## BACKGROUND

Between April 2010 and September 20, 2011, plaintiff worked as a delivery driver for defendant Roros Inc., a FedEx subcontractor with approximately 20 employees.[1] Roros Inc. was at all relevant times owned and operated by defendant Roros, who testified that, as a FedEx

---

[1] Unless otherwise noted, the facts set forth in this opinion are not in dispute.

1

subcontractor, he was responsible for hiring, disciplining, and terminating his own employees, all of whom "work for [him]." Defs. Ex. 6 at 23:15.

During plaintiff's time at the company, seven or eight of Roros Inc.'s employees were drivers, and the rest were helpers who assisted the drivers in handling packages. As a driver, plaintiff was responsible for delivering packages along a particular FedEx ground route that had been subcontracted to Roros Inc. Plaintiff was assigned one helper at the outset of her employment.

## I. Plaintiff's Pregnancy

On or about May 11, 2011, plaintiff learned that she was pregnant with her third child. While the parties dispute whether plaintiff informed Roros in person, Roros admitted at deposition that he learned of the pregnancy through plaintiff's coworkers roughly two months before plaintiff was terminated.

Plaintiff claims that, as soon as Roros became aware of the pregnancy, he began to treat her differently. According to plaintiff, Roros began to single her out by demanding that she (but not other drivers) make multiple attempts to deliver packages when initial attempts failed. Plaintiff also asserts that Roros expressed disapproval of her pregnancy and grew angry when she requested time off for pregnancy-related medical appointments; told coworkers that she was a "bitch" for attending those appointments; reprimanded her unnecessarily, even though he had consistently commended her work previously; and expressed frustration at having given plaintiff a second helper on her route.

Defendants deny these allegations. According to defendants, the only thing that changed as a result of plaintiff's pregnancy was that plaintiff received an additional helper. Roros testified that he assigned the helper, Todd Gibson, without expressing any irritation and with the

goal of training Mr. Gibson so that he could cover plaintiff's route when she took maternity leave. As a courtesy, Roros instructed plaintiff "not to pick up heavy packages; the other person would do it." Defs. Ex. 6 at 44:16–18.

## II. FedEx Investigation

In late August 2011 FedEx initiated an investigation into a large package missing from plaintiff's delivery truck. The package contained 44 BlackBerry cellular telephones valued at $7,800. FedEx's investigation report indicates that the package was scanned onto plaintiff's vehicle August 24, along with a second package addressed to the same business—namely, JC Cell. After several failed attempts, the second package was ultimately delivered September 1. FedEx's report indicates that no attempts were made to deliver the shipment of BlackBerry telephones. Sometime after it was loaded onto plaintiff's truck, that package disappeared.

On September 7 and 15, FedEx investigators interviewed plaintiff regarding the disappearance. According to FedEx's report, plaintiff told investigators that there was only one package for JC Cell on her truck on August 24. Plaintiff claimed that she attempted to deliver that package on multiple occasions, but was unable to do so because the shipment required payment on delivery, and the customer was unprepared with payment. Plaintiff stated that the package remained on her truck when she left for a one-week vacation around August 29, during which time Alex Valdez and Mr. Gibson covered her route.

On September 8, investigators interviewed Mr. Valdez as well as Jilani Mitchell, one of plaintiff's helpers during the week before her vacation. Mr. Valdez and Mr. Mitchell told investigators that there was only one package addressed to JC Cell on plaintiff's vehicle. Echoing plaintiff, Mr. Mitchell indicated that the package could not be delivered because the customer did not have payment ready. Although Roros testified at deposition that Mr. Gibson

3

also served as plaintiff's helper during the week preceding her vacation, investigators did not interview Mr. Gibson.

The investigators proceeded to interview a representative of JC Cell, who stated that he declined delivery, not because he was unable to pay, but because he was expecting a second package. The representative told investigators that he finally accepted delivery on September 1 only because, by then, the shipper had agreed to adjust the COD amount to reflect that only one package was being received.

FedEx's report concluded that plaintiff's and Mitchell's explanations were inconsistent with statements from JC Cell and that neither plaintiff nor Mr. Mitchell could provide "a reasonable explanation as to what happened to the missing package." Defs. Ex. 4 at 2, 3. The report noted that the "evidence of this case was presented to Roros and Sr. Mgr Chris Shea" and that Roros subsequently informed FedEx investigators "that he had terminated Peralta from his employment." *Id.* at 3.

### III. Circumstances of Plaintiff's Termination

All agree that plaintiff was terminated on September 20, 2011. Beyond that, the events surrounding her dismissal are the subject of vigorous dispute. Plaintiff contends that one month before she was dismissed she overheard a conversation between Mr. Gibson (her helper and trainee) and Roros in which Mr. Gibson threatened to quit if he were not promoted to be a full-time driver. Plaintiff states that Roros told Mr. Gibson, "Hang in there, don't leave yet." Peralta Decl. ¶16. According to plaintiff, Roros made several inquiries in the following weeks regarding packages that had been reported missing during plaintiff's vacation. Roros then called plaintiff on the morning of September 20 and told her not to come to work that day. Not wanting to supply Roros with a legitimate reason to fire her, plaintiff went to work anyway. When she

arrived, Roros told her that he was giving plaintiff's route to Mr. Gibson because he had threatened to leave absent the promotion. Plaintiff says that she told Roros that her pregnancy must be the real reason for her dismissal, whereupon a FedEx security officer approached plaintiff and instructed her to leave the facility.

Defendants do not admit these assertions. Their position is that it was *FedEx* that made the decision to terminate plaintiff and *FedEx*—specifically, a FedEx security officer—who did the firing. Roros, however, offered a different story at his deposition, where he testified that he personally terminated plaintiff but only because he was instructed to do so by FedEx in light of the missing package. According to Roros, he even objected to FedEx officials that plaintiff's dismissal would leave him shorthanded, but to no avail. In carrying out FedEx's instructions, Roros claims that he said nothing about promoting Mr. Gibson.

It is undisputed that plaintiff was the only employee terminated in connection with FedEx's investigation. The other employees with access to the missing package—including plaintiff's helpers during the week before her vacation and, if the package remained on plaintiff's vehicle, her replacement drivers during her vacation—were not disciplined. Mr. Gibson, in fact, was promoted to plaintiff's position.

## DISCUSSION

Summary judgment must be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of fact exists when there is sufficient admissible "evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The court must construe the facts in the light most favorable to the non-moving party "and all justifiable inferences are to be drawn" in that party's favor. *Id.* at 255. Nevertheless, summary

judgment may not be overcome with "mere speculation or conjecture." *Knight v. U.S. Fire Ins., Co.*, 804 F.2d 9, 12 (2d Cir. 1986). The non-movant must adduce "significantly probative" facts on which it could prevail at trial. *Anderson*, 477 U.S. at 249–50.

Summary judgment may be appropriate "even in the fact-intensive context of discrimination cases." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001). Courts must, however, exercise caution. Direct evidence of discriminatory intent "will only rarely be available," and thus "affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010) (internal quotation marks omitted).

## I. Title VII Claims

Title VII prohibits employment practices that "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Congress amended Title VII in 1978 to proscribe discrimination on the basis of pregnancy. It did so by enacting the Pregnancy Discrimination Act ("PDA"), which expanded Title VII's definition of discrimination "because of sex" to cover discrimination "on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k); *see also Newport News Shipbuilding and Dry Dock Co. v. E.E.O.C.*, 462 U.S. 669, 678–79 (1983). Under the PDA, "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k).

Plaintiff here asserts disparate treatment on the basis of her gender and pregnancy.[2] To prevail under Title VII she must show (1) she "has suffered an adverse job action under circumstances giving rise to an inference of discrimination"; or (2) that harassment on the basis of her gender and pregnancy "amounted to a hostile work environment." *Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004). Plaintiff contends that she has made both showings here.[3]

### A. Discriminatory Termination

The parties agree that, for purposes of summary judgment, plaintiff's claim of discriminatory termination is analyzed under the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). The plaintiff bears the initial burden of establishing a *prima facie* case by proving that (1) she is a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the action occurred in circumstances giving rise to an inference of discrimination. *See id.* at 802; *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). The "burden of establishing a *prima facie* Title VII case is *de minimis*." *Sassaman v. Gamache*, 566 F.3d 307, 312 (2d Cir. 2009) (internal quotation and bracket marks omitted).

If the plaintiff proves a *prima facie* case, the burden of production shifts to the employer to set forth a legitimate, non-discriminatory reason for the adverse employment action. *See Burdine*, 450 U.S. at 254–55. If the defendant makes this showing, the burden shifts back to the plaintiff to demonstrate that the adverse action was based, "at least in part," on discrimination. *See Holcomb v. Iona Coll.*, 521 F.3d 130, 138, 141 (2d Cir. 2008). Importantly, at this final step

---

[2] Plaintiff joins these allegations and does not attempt to assert a gender-based claim separate and apart from her pregnancy.

[3] As is required, plaintiff's Title VII claims are directed against her corporate employer Roros Inc. but not its principal. *See Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000) ("[I]ndividuals are not subject to liability under Title VII.").

"the plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors." *Id.* at 141 (internal quotation marks omitted); *see also* 42 U.S.C. § 2000e-2(m).[4]

Defendants here concede that plaintiff can establish the first three elements of her *prima facie* case, but assert that she cannot satisfy the fourth—specifically, that the circumstances surrounding her dismissal support an inference of discrimination. Defendants contend further that, even if plaintiff could make out a *prima facie* case, FedEx's investigation into the package missing from plaintiff's delivery vehicle supplied a legitimate reason for her dismissal and plaintiff cannot prove that defendants intentionally discriminated against her.

1. **Inference of Discrimination**

A Title VII claimant asserting that she was terminated on the basis of discrimination can satisfy the fourth prong of her *prima facie* burden simply by showing that her position was filled "with an individual who is not a member of the protected class." *Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 98 (2d Cir. 2001); *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 64 (2d Cir. 1995). Here, there is no dispute that plaintiff's position was filled by Mr. Gibson, a non-pregnant and male employee. Ordinarily, nothing more would need to be said of plaintiff's *prima facie* showing.

---

[4] Under the Civil Rights Act of 1991, if an "employer is found to have violated the statute, it has the opportunity to demonstrate, by a preponderance of the evidence, that it 'would have taken the same action in the absence of the impermissible motivating factor.'" *Holcomb*, 521 F.3d at 142, n.4 (quoting 42 U.S.C. § 2000e-5(g)(2)(B)). If the defendant proves this partial affirmative defense at trial, remedies are limited to declaratory relief, injunctive relief (excluding reinstatement), and attorney's fees. *See* 42 U.S.C. § 2000e-5(g)(2)(B); *see also* 5 Leonard Sand et al., *Modern Federal Jury Instructions*, ¶ 88.03 at 88-43 (2013).

Defendants contend, however, that plaintiff's *prima facie* case nevertheless fails because the parties who allegedly harbored discriminatory animus toward plaintiff—defendants Roros and Roros Inc.—played no role in the decision to terminate her employment. According to defendants, FedEx was solely responsible for plaintiff's dismissal. Because plaintiff has not alleged any discriminatory bias on the part of FedEx, defendants contend that plaintiff is precluded from establishing an inference of discrimination.

The argument is unpersuasive. To be sure, a *prima facie* case fails at the threshold if there is "no evidence in the record that anyone who was responsible for [the adverse employment action] harbored a discriminatory motive toward the plaintiff or acted with a discriminatory intent." *Mathirampuzha v. Potter*, 548 F.3d 70, 79 (2d Cir. 2008). At a minimum, the plaintiff must demonstrate that a biased party played a "meaningful role" in the adverse action. *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 451 (2d Cir. 1999). If not, the plaintiff cannot establish, as she must, that the action occurred "because of" discrimination. *See* 42 U.S.C. § 2000e–2(a)(1).

Here, however, a reasonable juror could conclude that defendants played a meaningful— if not an exclusive—role in the decision to terminate plaintiff. For one, that is precisely what FedEx's investigation report, on which defendants rely, indicates.[5] After recounting interviews with plaintiff and other Roros Inc. employees, the report concludes by noting that the "evidence of this case was presented to Roros" and that Roros subsequently notified FedEx "that *he* had terminated Peralta from his employment." Defs. Ex 4 at 3 (emphasis added). The report

---

[5] The parties do not challenge the admissibility of the FedEx report or any other evidence contained in the summary judgment record. In relying on these materials the court expresses no view on their ultimate admissibility. *See* 10A Charles Alan Wright et al., *Federal Practice and Procedure* § 2722 (3d ed. 1998) (on summary judgment courts have no obligation to address admissibility *sua sponte*)

contains no FedEx directive, either direct or indirect, to dismiss plaintiff. In addition, a reasonable juror could credit plaintiff's testimony that it was Roros, and not FedEx, who dismissed her. Her testimony in this respect is not only consistent with the FedEx report, it comports with Roros's admission at deposition that he bore ultimate responsibility for hiring, disciplining and terminating his own staff.

Defendants identify no evidence to the contrary. Instead, they merely reference plaintiff's unverified complaint, which is of no assistance to them, as it alleges quite plainly that Roros terminated plaintiff, *after which* a FedEx security officer instructed plaintiff to exit the premises. *See* Compl. ¶¶ 41-42. And, while Roros asserted at deposition that he fired plaintiff on FedEx's instructions, a reasonable juror could disbelieve his testimony. Tellingly, defendants have produced no documentary or testamentary evidence of such an instruction. Nor have they produced evidence that Roros was bound to adhere to any employment instructions FedEx might have issued. To the contrary, the only evidence from FedEx in the record is the investigation report disclaiming responsibility. Plaintiff has established a *prima facie* case.

### 2. Motivation for Termination

Defendants contend that, even if plaintiff sustains a *prima facie* case, FedEx's investigation supplied a legitimate non-discriminatory reason for her termination. Plaintiff concedes as much. Thus, the burden shifts back to plaintiff to demonstrate that her pregnancy was at least a motivating factor behind her dismissal. *See Holcomb*, 521 F.3d at 141. To carry this burden, plaintiff need not establish that the proffered reason for her dismissal was "entirely pretextual." *Id.* at 141–42. Nevertheless, a showing of pretext, combined with evidence supporting a *prima facie* case, is often sufficient to permit a rational finding of improper

discrimination. *See id.* at 141 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000)).

A plaintiff terminated for misconduct can show pretext by demonstrating that "similarly situated" coworkers outside the protected class engaged in comparable misconduct but were not terminated. *See Gorzynski*, 596 F.3d at 108; *Feingold*, 366 F.3d at 156; *Polito v. Tri-Wire Eng'g Solutions, Inc.*, 699 F. Supp. 2d 480, 494–95 (E.D.N.Y. 2010). Employees can be "similarly situated" even if their misconduct is not "identical" in all respects. *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000). There just needs to be a "reasonably close resemblance of the facts and circumstances." *Id.* Important considerations include (1) whether the asserted comparators "were subject to the same workplace standards" and (2) the comparative seriousness of the alleged misconduct. *Id.* The PDA also requires consideration of whether asserted comparators are similar in their "ability or inability to work." 42 U.SC. § 4000e(k).[6]

Here, defendants' only proffered reason for dismissing plaintiff—her potential mishandling of a valuable package—applied with equal force to a number of non-pregnant coworkers who had similar access to the missing package but nonetheless kept their jobs. These employees include plaintiff's helpers during the week of August 24 (Mr. Mitchell and Mr.

---

[6] The Sixth Circuit has held that the PDA supplants existing standards of comparison and "requires *only* that [an asserted comparator] be similar in his or her 'ability or inability to work.'" *Ensley-Gaines v. Runyon*, 100 F.3d 1220, 1226 (6th Cir. 1996) (emphasis added) (quoting 42 U.S.C. § 2000(k)). On this basis, *Ensley-Gaines* concluded that the PDA entitles pregnant employees to workplace accommodations that their employers grant for comparable temporary disabilities (even if those accommodations are typically available only to employees disabled on the job). *See id.* at 1226. The Second Circuit has not addressed *Ensley-Gaines*, but other circuits have rejected its reasoning and the Supreme Court recently granted certiorari to address the circuit split. *See Young v. United Parcel Serv., Inc.*, 707 F.3d 437, 447–49 (4th Cir. 2013) (collecting cases), *cert. granted*, 134 S. Ct. (2014). This controversy has no bearing here. Plaintiff is not claiming entitlement to any pregnancy-related accommodations. Moreover, for purposes of showing pretext, plaintiff has identified comparators who were similarly situated in all material respects, including in their "ability or inability to work."

Gibson) and, potentially, the drivers who covered her route when she departed for vacation August 29 (Mr. Gibson and Mr. Valdez). Notably, FedEx's report concluded that Mr. Mitchell, like plaintiff, could not provide a reasonable explanation for the package's disappearance. But Mr. Mitchell was not even disciplined. Nor were the other coworkers who had access to the package. Indeed, Mr. Gibson was promoted to plaintiff's position.

A reasonable juror could conclude that these undisciplined coworkers were "similarly situated" to plaintiff and that their favorable treatment demonstrates pretext. *See Polito*, 699 F. Supp. 2d at 494–95 (jury could find pretext where employees involved in workplace altercation were equally culpable but the employer terminated only the pregnant combatant). Defendants do not appear to argue otherwise, nor could they legitimately.

Importantly, defendants do not contend that plaintiff was subject to unique employment standards that explain why she was treated differently from her coworkers. Nor is there evidence indicating that plaintiff was more likely responsible for the package's disappearance. In fact, Roros acknowledged at deposition that when the package disappeared, plaintiff's helpers were doing "the majority of the lifting" for her, just as Roros had instructed. *See* Defs. Ex. 6 at 53:18-22. Roros was not even sure if plaintiff would have been able to manipulate the missing package, which, by all accounts, was sizable and heavy.

Finally, defendants do not suggest that plaintiff and her coworkers were dissimilar in their ability or inability to work, much less that plaintiff was terminated because of any such dissimilarity. The existing record would not support such a claim in any case.[7] In short,

---

[7] Roros assigned plaintiff an additional helper after she became pregnant. But he did so to train that helper as a driver. There is no evidence that plaintiff requested the additional assistance. At deposition, Roros acknowledged that plaintiff was a "good worker," Defs. Ex. 6 at 29:16, and drew no material distinction between her capabilities and those of her coworkers.

12

defendants identify no material difference between plaintiff and her undisciplined coworkers. And even if they had, that plaintiff was terminated and the coworkers "were not disciplined *at all*" could still demonstrate pretext. *See Feingold*, 366 F.3d at 153.

The evidence of pretext plaintiff has adduced is "simply one form of circumstantial evidence that is probative of intentional discrimination." *See Reeves*, 530 U.S. at 147 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 517 (1993)). It is, however, "quite persuasive" in this regard. *See id.* at 147 (noting that it is often permissible to "infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose"). An inference of discrimination draws additional support here from evidence that Roros disapproved of plaintiff's pregnancy and, according to plaintiff, let it be known by, *inter alia*, telling coworkers that plaintiff was a "bitch" for attending prenatal appointments, reprimanding her unnecessarily, and forcing plaintiff (but not other drivers) to make additional deliveries. The Second Circuit has found comparable allegations indicative of intentional discrimination. *See Kerzer v. Kingly Mfg.*, 156 F.3d 396, 402–03 (2d Cir. 1998) (jury could find intentional discrimination on the basis of, *inter alia*, off-color comments and supervisor's change in attitude following plaintiff's announcement of pregnancy).

Defendants' only response is that plaintiff's description of her treatment should be disregarded because it is set forth in an affidavit that contradicts her prior deposition testimony. They rely on the principle that a non-movant on summary judgment cannot manufacture issues of fact by supplying an affidavit that contradicts prior sworn statements. *See Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). Plaintiff's affidavit here, however, is consistent with her prior deposition testimony. In arguing to the contrary, defendants cherry-pick snippets of

plaintiff's testimony that might suggest contradictions and ignore the elaboration that shows there are none.[8]

Crediting the totality of plaintiff's allegations, a reasonable juror could conclude that Roros harbored misgivings about plaintiff's pregnancy and, once a shipment came up missing from her vehicle, doled out selective discipline to replace her with a non-pregnant employee. That is discrimination under Title VII.

### B. Hostile Work Environment

To prevail on a Title VII hostile work environment claim, the plaintiff must allege harassment that was "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Feingold*, 366 F.3d at 149 (internal quotation marks omitted). Among other factors, courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with [the] employee's work performance." *Id.* at 150 (internal quotation marks omitted). To be actionable, incidents "must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Id.* (internal quotation marks omitted). Nevertheless, "a single act can create a hostile work environment if it in fact works a transformation of the plaintiff's workplace." *Id.* (internal quotation and bracket marks omitted).

In claiming a hostile work environment, plaintiff reasserts the facts underlying her discriminatory termination claim—in short, episodes of name-calling (heard secondhand), undue

---

[8] For example, defendants claim that at deposition plaintiff could recall no post-pregnancy changes in her work environment, in contrast to her affidavit which states that Roros responded to her pregnancy by requiring that she make additional delivery attempts. There is no contradiction here. In deposition testimony that defendants pass over, plaintiff discussed the second-delivery attempts. *See* Defs. Ex. 5B at 47:18–48:11, 75:9–12. Defendants' other efforts to identify contradictions are equally unsupported.

reprimands, perceived animosity, and unwelcome work assignments. This alleged pattern of behavior, while perhaps indicative of discriminatory animus, does not exhibit the severity or pervasiveness of an actionable hostile work environment. *See Augustin v. The Yale Club of New York City*, 274 Fed. App'x 76, 77 (2d Cir. Apr. 23, 2008) ("[E]pisodes of name-calling, inappropriate behavior by a supervisor, and other perceived slights . . . do not constitute a hostile work environment."); *Clarke v. InterContinental Hotels Grp., PLC*, 2013 WL 2358596, at *10 (S.D.N.Y. May 30, 2013) (receiving "more work" does not make work environment "hostile"); *Brown v. Cnty. of Erie*, 2013 WL 885993, at *6 (W.D.N.Y. Mar. 8, 2013) ("some generally harsh criticism and reprimands" by supervisors insufficient to support hostile work environment claim); *Sardina v. United Parcel Serv., Inc.*, 254 Fed. App'x 108, 110 (2d Cir. Nov. 20, 2007) ("[A] few off-color comments including references to 'office bitches'" do not show an objectively hostile work environment.); *Sletten v. LiquidHub, Inc.*, 2014 WL 3388866, at *7 (S.D.N.Y. July 11, 2014) (Comments heard secondhand are less "impactful" and thus "less persuasive in stating a hostile work environment claim.").

Equally fatal is the absence of evidence that plaintiff perceived Roros's conduct to be sufficiently abusive as to affect the conditions of her employment. *See Feingold*, 366 F.3d at 150 (environment must be objectively hostile and plaintiff must "subjectively perceive" it to be so (internal quotation marks omitted).). For this additional reason, plaintiff's hostile work environment claim fails as a matter of law.

## II. NYCHRL Claims

Plaintiff alleges parallel discrimination claims under the NYCHRL, as well as NYCHRL claims of interference with a protected right (§8-107(19)), aiding and abetting liability (§8-107(6)), and employer liability (§8-107(13)). Plaintiff's NYCHRL claims are directed against

both Roros Inc. and Roros. *See Feingold*, 366 F.3d at 158–59 ("[C]laims against . . . individual defendants may proceed under the NYCHRL.")

Although defendants have moved for summary judgment "dismissing plaintiff's complaint in its entirety," *see* Notice of Motion at 1, defendants do not address or even acknowledge plaintiff's NYCHRL claims.[9] Accordingly, the court understands the motions as not directed to the claims brought under the NYCHRL. In any event, defendants have not carried their summary judgment burden on the NYCHRL claims.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is GRANTED as to plaintiff's Title VII claim asserting a hostile work environment. It is DENIED as to all other claims. The parties are directed to prepare a joint pretrial order and file it with the court by January 16, 2015.

**SO ORDERED.**

s/Nina Gershon

**NINA GERSHON**

**United States District Judge**

Dated: Brooklyn, New York
December 9, 2014

---

[9] Oddly, defendants' opening memorandum briefly addresses claims purportedly brought under the New York State Human Rights Law ("NYSHRL") only to assert that NYSHRL claims are analyzed under the Title VII framework. In her opposition papers, plaintiff notes that she pleaded claims under the NYCHRL, not the NYSHRL, and that such claims benefit from different and more liberal standards. In reply, defendants again fail to address the NYCHRL.

16